IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SANDRA GRAY,
   Plaintiff,
     v.
THE CITY OF ROSWELL, et al.,
   Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-2799-TWT

ORDER

This is a civil rights action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 5]. For the reasons set forth below, the Court GRANTS the Defendants' Motion to Dismiss. As a result, the Plaintiff's Motion for Partial Summary Judgment [Doc. 9] is DENIED as moot.

I. Background

This action against the City of Roswell (the "City") and Officers Patrick Ferdarko, Brandon Crawford, and Nick Mariani stems from the Officers' response to a landlord-tenant dispute. The Plaintiff, Sandra Gray, owns the residence at 1270 Taylor Oaks Drive, Roswell, Georgia, and permitted Gregory Pompelia to reside in her home with her for several months. (Compl. ¶¶ 11-12.) While "no formal rental agreement" existed, the Plaintiff had an "oral agreement" with Pompelia to reside at

her home as "a guest" during the winter. (Id. at ¶ 14.) In exchange, Pompelia agreed to "exhibit good behavior and contribute a modest sum towards household expenses." (Id.) In January 2011, the Plaintiff informed Pompelia that "his conduct was unacceptable and ordered him to leave." (Id. at ¶¶ 15-16.) Pompelia refused to leave. (Id. at ¶ 17.) After several failed demands that Pompelia leave, the Plaintiff resorted to "self help" on February 9, 2011. (Id. at ¶ 18.) In particular, the Plaintiff changed all the locks and removed all of Pompelia's personal property from the house. (Id. at ¶ 19.) When Pompelia returned to the house, "he found his property outside the home, and unable to gain entry." (Id. at ¶ 20.)

Pompelia called the Roswell Police Department. (Id. at ¶ 21.) Officers Patrick Ferdarko, Brandon Crawford, and Nick Mariani responded to the call. (Id. at ¶ 22.) Officer Ferdarko entered the Plaintiff's home "with her permission." (Id. at ¶ 25.) The Plaintiff claims that she never gave permission for the other officers to enter, but they entered anyway. (Id. at ¶ 28.) The Plaintiff advised "Ferdarko that Mr. Pompelia was a guest who had been ordered to leave but would not, and that Plaintiff had resorted to self help." (Id. at ¶ 26.) She further advised Officer Ferdarko that she had given Pompelia until February 9, 2011 to move out. (Id. at ¶ 31.) When Pompelia refused to leave, the Plaintiff changed the locks and removed Pompelia's property from the house. (Id.) "Pompelia presented a list of his belongings to the Defendants,

and claimed that the Plaintiff had damaged his property, as was reflected by the list." (Id. at ¶ 36.) "Pompelia claimed that the Plaintiff had damaged his property to the value of Five Thousand Six Hundred Dollars ($5,600)." (Id. at ¶ 37.) Officer Ferdarko arrested the Plaintiff on the charge of "criminal damage to property." (Id. at ¶ 40.) After Officer Ferdarko removed the Plaintiff from her home and took her to jail, Officers Crawford and Mariani allowed Pompelia to reenter the Plaintiff's home and continue living there. (Id. at ¶¶ 42-44.)

The Plaintiff filed the Complaint in this Court on August 23, 2011 [Doc. 1]. She claims that the City and the Defendant Officers violated her federal constitutional rights under the Fourth and Fourteenth Amendments, and has brought a suit for damages pursuant to 42 U.S.C. § 1983. The Plaintiff specifically claims that the Defendant Officers unlawfully entered her home, unlawfully arrested her, and unlawfully allowed Pompelia to enter and remain in her home. The Defendants filed this Motion to Dismiss [Doc. 5] on September 16, 2011. On October 10, 2011, the Plaintiff filed a Motion for Partial Summary Judgment [Doc. 9]. The Court considers the Defendants' Motion to Dismiss now before considering the Plaintiff's Motion for Partial Summary Judgment.

## II. Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that

the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S.Ct. at 1964).

### III. Discussion

#### A. Claims Against the City

Section 1983 provides a private cause of action for persons whose rights under

the federal Constitution have been violated under color of state law. 42 U.S.C. § 1983. The statute confers no substantive rights itself. Instead, it provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 394 (1989). To establish a Section 1983 violation, a plaintiff must show (1) conduct committed by a person acting under color of state law (2) that deprived her of rights, privileges or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986); see also Duke v. Massey, 87 F.3d 1226, 1231 (11th Cir. 1996). Municipalities and other bodies of local government are "persons" within the meaning of Section 1983. Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 690 (1978).

The Plaintiff seeks to hold the City of Roswell liable for the alleged constitutional violations committed by Officers Ferdarko, Crawford, and Mariani. A plaintiff suing a local governmental entity under Section 1983 bears an additional burden to the normal Section 1983 requirements. Wideman v. Shallowford Community Hosp., Inc., 826 F.2d 1030, 1032 (11th Cir. 1987). To establish the liability of a city or county, the plaintiff must also show that the constitutional deprivation resulted from a custom, policy or practice of the municipality. Id. (citing Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 694 (1978)). Proof of

a single isolated incident of unconstitutional activity generally is insufficient to impose municipal liability under Monell. Id.; see also Anderson v. City of Atlanta, 778 F.2d 678, 685 (11th Cir. 1985).

The Supreme Court and the Eleventh Circuit have strictly limited municipal and county liability under Section 1983. Gold v. City of Miami, 151 F.3d 1346 (11th Cir. 1998). A municipality or county is not liable through *respondeat superior* for the wrongful acts of its employees. Id. at 1350 (citing Monell, 436 U.S. at 691). Thus, plaintiffs asserting municipal or county liability under Section 1983 must show that the government's "official policy" caused the unconstitutional actions of its employee. Gold, 151 F.3d at 1350. To do this, plaintiffs must "identify a municipal 'policy' or 'custom' that caused [their] injury." Id. (citing Bryan County Com'rs. v. Brown, 520 U.S. 397 (1997)). "It is only when the 'execution of the government's policy or custom...inflicts the injury' that the municipality may be held liable under § 1983." Id. (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

The Plaintiff has not identified a municipal policy or custom that caused her injury. The Plaintiff alleges that the Officers' actions were "within the policy, practice, custom, or procedure of the City of Roswell Police Department." (Compl. ¶ 57.) However, the Plaintiff's legal conclusion lacks factual support. The Plaintiff makes the implausible claim that City police officers "routinely violate the IV and

XIV Amendments to the Constitution by warrantless entry into a private residence and/or involving Police Officers in the resolution of civil disputes to which they have no jurisdiction"; yet while making this assertion she cites no examples of such conduct in addition to the allegation that she was a victim of such a constitutional violation in this case. (Id. at ¶ 60.) The Plaintiff also alleges that the City "does not train its Officers to sufficiently understand the difference between a civil matter and a criminal matter." (Id. at ¶ 59.) The Plaintiff's legal conclusion that officers need more training is insufficient to state a failure to provide training claim. See City of Canton v. Harris, 489 U.S. 378, 387-89 (1989).

### B. Qualified Immunity

As previously discussed, to establish a Section 1983 violation, the Plaintiff must show (1) conduct committed by a person acting under color of state law (2) that deprived her of rights, privileges, or immunities secured by the Constitution or laws of the United States. Duke v. Massey, 87 F.3d 1226, 1231 (11th Cir. 1996). The Plaintiff alleges a deprivation of her right to be free from unlawful intrusion into her home and unlawful arrest.

Officers Ferdarko, Crawford, and Mariani are protected from all of the Plaintiff's claims by qualified immunity. Qualified immunity shields government officials executing discretionary responsibilities from civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is a question of law to be decided by the Court. The test for qualified immunity is one of "objective-reasonableness" in evaluating the conduct of the government official claiming its protection. "[A]ll but the plainly incompetent or those who knowingly violate the law" find protection in qualified immunity. Id. (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The Defendant Officers have clearly established the first prong of the test for qualified immunity. A government official can prove he acted within the scope of his discretionary authority by showing "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988); Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. 1981).[1] The Officers responded to a call regarding an unlawful eviction and criminal destruction of property, investigated, and made an arrest. These were all actions carried out in the

---

[1] In Bonner v. City of Pritchard, 661 F.2d 1206, 1207 (11 th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

performance of their normal job duties and were within their authority as police officers for the City of Roswell. Accordingly, it can only be concluded that they were acting within the scope of their discretionary authority.

Now that the Defendants have shown that their actions were carried out in the performance of their discretionary duties, the burden shifts to the Plaintiff to show that the Defendants' actions violated established constitutional law that existed at the time the challenged actions transpired. The Defendant Officers find protection in qualified immunity as the Court cannot find that they clearly or knowingly violated the law. First, the Plaintiff claims that Officers Crawford and Mariani unlawfully entered her home. However, she admits that she consented to Officer Ferdarko entering her home. Officers Crawford and Mariani could have logically inferred that the Plaintiff had consented to their entrance as well. Certainly the Court cannot find that they were "plainly incompetent" in making that factual determination. See Courson, 939 F.2d at 1487. "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotations and citations omitted). If there was a mistake of fact it was objectively reasonable and thus there is no need for discovery. See id. at 231-32 ("[W]e have made clear that the driving force behind creation of the qualified

immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery. Accordingly, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (internal quotations and citations omitted).

Second, the Plaintiff claims that the Defendant Officers unlawfully arrested her. To establish qualified immunity from Section 1983 liability in the context of an unlawful arrest claim, the defendant need not demonstrate that he had probable cause to arrest the plaintiff. Jones v. City of Dothan, Ala., 121 F.3d 1456, 1459 (11th Cir. 1997). Rather, the defendant is shielded from liability upon evidence that he had "arguable probable cause" to make the arrest. Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997). This lower standard of arguable probable cause is satisfied if a reasonable officer in similar circumstances could have believed that there was probable cause for the arrest. Id. Arguable probable cause certainly does not require the arresting officer to act as the prosecutor and prove every element of a crime before making an arrest. See Scarbrough v. Myles, 245 F.3d 1299, 1302-03 (11th Cir. 2001) (per curiam).

Officer Ferdarko arrested the Plaintiff for "criminal damage to property." (Compl. ¶ 40.) Based on the Plaintiff's factual allegations, O.C.G.A. § 16-7-23 ("Criminal damage to property in the second degree") is the only applicable statute.

In particular, the statute provides:

> (a) A person commits the offense of criminal damage to property in the second degree when he: (1) Intentionally damages any property of another person without his consent and the damage thereto exceeds $500.00; or (2) Recklessly or intentionally, by means of fire or explosive, damages property of another person.
> (b) A person convicted of the offense of criminal damage to property in the second degree shall be punished by imprisonment for not less than one nor more than five years.

O.C.G.A. § 16-7-23. Given the elements of the crime, Officer Ferdarko had arguable probable cause for the arrest.

The probable cause determination focuses on what the arresting officer knew at the time of the arrest. At the time of the arrest, Officer Ferdarko knew that the Plaintiff had engaged in "self help" to evict a tenant by intentionally placing his property outside the home during the winter. The Plaintiff's allegations that Officer Ferdarko "continued to insist that Plaintiff had to allow Pompelia back into her house" (Compl. ¶ 27) show that Officer Ferdarko knew that the Plaintiff had failed to file a dispossessory action (a "civil matter") against Pompelia. Officer Ferdarko knew that the property had been placed outside without Pompelia's consent; Pompelia called the police when he found his property outside the home and when he was unable to gain entry. (Id. at ¶¶ 20-21.) Officer Ferdarko knew that Pompelia, as the complaining witness, claimed that the Plaintiff had damaged his property by placing the property outside. Pompelia provided a list of damaged property and claimed that the damages

exceeded $5,600. (Id. at ¶¶ 36-37.)

The Defendant Officers had information before them making it reasonable for them to believe that the Plaintiff had caused damage to Pompelia's property at the time they made the arrest. The Defendant Officers had arguable probable cause to arrest the Plaintiff. Finally, the Court cannot find that the Defendant Officers were "plainly incompetent" in concluding that Pompelia had been unlawfully evicted from the residence at 1270 Taylor Oaks Drive, Roswell, Georgia, and thus securing his place there when he otherwise could have been homeless.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS the Defendants' Motion to Dismiss [Doc. 5]. The Plaintiff's Motion for Partial Summary Judgment [Doc. 9] is DENIED as moot.

SO ORDERED, this 3 day of February, 2012.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge