IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SANDRA GRAY,

    Plaintiff,

      v.

PATRICK C. FERDARKO, and
BRANDON CRAWFORD,

    Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-2799-TWT

OPINION AND ORDER

This is a civil rights action. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 48] and the Plaintiff's Cross-Motion for Partial Summary Judgment [Doc. 55]. For the reasons set forth below, the Defendants' Motion for Summary Judgment [Doc. 48] is GRANTED in part and DENIED in part. The Plaintiff's Cross-Motion for Partial Summary Judgment [Doc. 55] is DENIED.

I. Background

In 2011, the Plaintiff, Sandra Gray, was allowing Gregory Pompelia to reside in her home. (Defs.' Statement Material Facts ¶ 1.) In exchange, Pompelia made $100 monthly payments that were put towards household expenses. (Id. ¶ 2; Pl.'s Statement Material Facts ¶ 41.) A number of incidents occurred which made Gray fearful of

Pompelia. (Pl.'s Statement Material Facts ¶ 12.) On one occasion, Pompelia "became angry because [Gray] had turned off the TV, so he picked up burning logs from the fire place and threw them out onto [Gray's] back yard." (Id. ¶ 9.) Gray told Pompelia that he had until February 9, 2011, to move out. (Defs.' Statement Material Facts ¶ 3.)

Gray returned home on February 9, 2011, and saw that none of Pompelia's items had been packed. (Id. ¶ 4.) She called her son, and together they began packaging Pompelia's items in plastic bags and moving it outside onto Gray's truck bed. (Pl.'s Statement Material Facts ¶ 14.) These items included toiletries, herbal supplements, clothing, a clock radio, a dot matrix printer, and a computer. (Id. ¶ 17.) Gray also had the locks on the door changed. (Id. ¶ 13.) Once Gray noticed that it was beginning to rain, she placed a tarp over Pompelia's property to protect it. (Id. ¶ 15.)

Pompelia returned and saw that his property had been placed outside. (Defs.' Statement Material Facts ¶ 8.) Pompelia then called the police. (Id.) Officer Ferdarko was the first to appear. (Id. ¶ 9.) He briefly spoke to Pompelia, and then he knocked on the door. He was greeted by Gray, and was invited inside to discuss the situation further. (Id. ¶ 13.) Pompelia remained outside. (Id.) Ferdarko explained to Gray that she needed to follow the proper eviction procedure, and that Pompelia was to be let back in. (Pl.'s Statement Material Facts ¶¶ 42-43.) Gray explained that she was an

attorney and that she resorted to self-help because she did not feel safe with Pompelia residing in her home. (Id. ¶ 40.)

Officers Crawford and Mariani then arrived on the scene. (Id. ¶¶ 47-48.) They saw Pompelia sitting outside and briefly spoke with him. (Id. ¶¶ 56-57.) Once notified that Ferdarko was inside, Crawford knocked on the door. (Defs.' Statement Material Facts ¶ 23.) Crawford informed Gray that having an officer alone in a person's house with the door closed and locked posed a safety risk. (Id.) Gray moved aside and let Crawford in. Mariani remained outside with Pompelia. (Id. ¶ 24.)

Crawford informed Gray that she could not resort to self-help in evicting Pompelia, and that Pompelia could file criminal charges. (Id. ¶¶ 25-26.) Gray indicated that it was a civil matter. (Pl.'s Statement Material Facts ¶ 59.) The Defendants admit that during this encounter, Gray remained calm and respectful. (Id. ¶ 44.) Gray alleges that she felt as if the officers were "bullying" her for making clear that she was an attorney and for challenging them. (Id. ¶ 68.) Eventually, Ferdarko placed Gray under arrest for criminal damage to property. (Id. ¶ 69.) Ferdarko then transported Gray to the Roswell City jail. (Id.)

Aside from a cursory glance which revealed that there was snow on top of the property, none of the officers further inspected the property to see if any of it was damaged. (Id. ¶¶ 102, 109; Defs.' Statement Material Facts ¶¶ 12, 21.) Despite being

equipped with cameras, no pictures were taken. (Pl.'s Statement Material Facts ¶ 112.) None of the officers took an inventory of the property. (Id.) A list of allegedly damaged property was created by Pompelia, but the parties dispute when it was made. The Defendants allege that while Mariani was outside with Pompelia, he had Pompelia create a list of his damaged property. (Id. ¶ 88.) Mariani admits that they were standing in the open rain while the list was created. (Id. ¶ 89.) The list showed no sign that it ever came into contact with water. (Id. ¶¶ 90-95.) Mariani testified that he then gave the list to Ferdarko before Ferdarko arrested Gray. (Id. ¶ 96.) Ferdarko testified that it was Crawford who handed him the list. (Id. ¶ 98.) Gray offers a different story. She alleges that this list was created after her arrest. Gray's son testified that he was present when Gray was arrested. (Id. ¶ 70.) Gray's son testified that the list was made after Gray was taken to jail when Pompelia was let back into the home by Crawford. (Id. ¶¶ 115-116.) There is no allegation that any of the property was found to be damaged. All charges against Gray were dismissed.

      The Plaintiff Gray asserted claims, under § 1983, for false arrest and warrantless entry. The Court originally granted the Defendants' motion to dismiss on qualified immunity grounds. The Eleventh Circuit affirmed in part and reversed in part and remanded the case. The Defendants now move for summary judgment on all claims. The Plaintiff moves for partial summary judgment on liability.

II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990).

III. Discussion

A. Warrantless Entry

Gray claims that Crawford violated her Fourth Amendment rights when he entered her home with Pompelia after she had been arrested and taken to jail. "[A] warrantless entry is valid when based upon the consent of a third party whom the

police, at the time of entry, reasonably believed possessed common authority over the premises, even if the third party does not in fact possess such authority." U.S. v. Fernandez, 58 F.3d 593, 597 (11th Cir. 1995) (citing Illinois v. Rodriguez, 497 U.S. 177, 188-89 (1990)). Common authority "rests . . . on mutual use of the property by persons generally having joint access or control for most purposes." U.S. v. Matlock, 415 U.S. 164, 172 n.7 (1974). The "determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" Illinois, 497 U.S. at 188 (internal quotation marks omitted).

Here, Pompelia had been residing in Gray's home. (Pl.'s Statement Material Facts ¶ 8.) Gray admits that she was receiving payments from Pompelia. (Id. ¶ 41.) She alleges that these were not rent payments, but rather payments to cover expenses. (Id.) This is a distinction without a difference. Regardless of how she dispensed of his payments, he made monthly payments and Crawford was justified in believing that Pompelia had the rights of a co-tenant and could authorize his entry. Summary judgment as to the Plaintiff's claim of warrantless entry against the Defendant Crawford should be granted. The Plaintiff asserts no independent Fourteenth

Amendment claim, thus summary judgment as to her Fourteenth Amendment claims against both Crawford and Ferdarko should be granted.

B. False Arrest

Gray claims that the Defendants arrested her without probable cause. "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). "Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." Id. It has long been the law in this Circuit that while determination of the historical facts is for the jury, the ultimate determination of "probable cause" is one for the Court. See Seaboard Oil Co. v. Cunningham, 51 F.2d 321 (5th Cir. 1931) ("[O]n undisputed facts, probable cause is a question of law for the court. But where the evidence is in substantial conflict . . . probable cause is a question for the jury. Of course, it is the duty of the court to instruct the jury as to what facts will constitute probable cause or want of it, leaving it to the jury to . . . find the facts."); Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990) ("When the facts are not in dispute, whether probable cause existed is a question of law."). To justify his arrest, Ferdarko invoked O.C.G.A. § 16-7-23(a)(1):

"A person commits the offense of criminal damage to property in the second degree when he . . . [i]ntentionally damages any property of another person without his consent and the damage thereto exceeds $500.00."

Here, as a matter of law, there was no probable cause because no reasonable investigation took place. "[O]fficers must investigate objectively and consider all information available to them at the time." Kingsland v. City of Miami, 382 F.3d 1220, 1229 (11th Cir. 2004). "[A]n officer may not choose to . . . not obtain easily discoverable facts." Id.; see also Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) ("[T]he complaint does not reveal that Christian took any independent steps to investigate the . . . tip or had any evidence prior to arresting Ortega which would have corroborated the [information] . . .."). The policy is to "deter dishonest officers from fabricating charges to cover up improper detentions by including only selective evidence in their reports." Kingsland, 382 F.3d at 1229.

The Eleventh Circuit's reasoning in this case is dispositive:

> [T]he Officers knew of exculpatory evidence and failed to investigate both sides of the story. The Officers, after learning that some of the property was not damaged, were no longer justified in relying solely on Pompelia's claims. At that point, a reasonable officer would, at the very least, further investigate to see if Gray had actually damaged any property. This is especially true when the investigation into the allegedly damaged property only required the Officers to ask Pompelia to show them his damaged property. . . . *[T]he Officers did not have probable cause to arrest Gray until they verified some of Pompelia's statements.*

Gray v. Roswell, 486 Fed. Appx. 798, 801-02 (11th Cir. 2012) (emphasis added) (internal quotation marks and citations omitted). The Defendants argue that the Court of Appeals' decision came on a motion to dismiss. However, that distinction only matters if the decision was based on factual allegations that are disputed. The factual basis of the Court of Appeals' conclusion was that there was exculpatory information that would have caused a reasonable officer to conduct a further inspection. Here, the Defendants have conceded that, at minimum, most of the items were packaged in garbage bags. (Defs.' Resp. to Pl.'s Statement Material Facts ¶ 14.) They have conceded that there was a tarp. (Id. ¶ 15.) It makes no difference that they are contending that not every item was covered by the tarp. The point is that measures were taken to protect the property from the snow, which would have caused a reasonable officer to inspect further to see if there was damage.

In their motion for summary judgment, the Defendants do not even address the Court of Appeals' conclusion regarding their failure to inspect the property. They do not explain why they chose to rely on indirect evidence when they could have easily obtained direct evidence. Instead, the Defendants argue that based on the set of facts they considered, there was probable cause. (Defs.' Mem. Supp. Mot. Summ. J., at 11-12.) This is not responsive. The fact that no inspection took place means that the "set of facts" itself was improperly constituted. This precludes a finding of probable

cause based on that set of facts. Concluding otherwise would run counter to the policy of requiring a sufficient inspection. It would permit the Defendants to manufacture probable cause by solely considering the inculpatory evidence -- Pompelia's word and the allegation that there was snow on the tarp -- while turning a blind eye to exculpatory evidence. Thus, Ferdarko lacked probable cause to arrest Gray even assuming each of the Defendants' allegations to be true.[1]

In a final effort, the Defendants argue that there may have been probable cause based on a different criminal statute. They cite O.C.G.A. § 16-7-21(a), which states: "A person commits the offense of criminal trespass when he or she . . . knowingly and maliciously interferes with the possession or use of the property of another person without consent of that person." "As a criminal statute, OCGA § 16-7-21 is subject to strict construction." McGonagil v. Treadwell, 216 Ga. App. 850, 853 (1995). The Defendants must show that a reasonable officer could believe that by placing property in a location where Pompelia could easily retrieve it, he was somehow precluded from using or possessing it. No reasonable person could reach this conclusion. The Court

---

[1] The Defendants cite Myers v. Bowman, 713 F.3d 1319 (11th Cir. 2013) for the proposition that they were entitled to rely solely on Pompelia's allegations. In Myers, the court concluded that the victims "were particularly reliable and trustworthy sources because they were government officials[,] [a]nd the record [did] not establish any circumstances known . . . that would negate the existence of probable cause." Id. at 1327. Here, the Eleventh Circuit made clear that the Defendants could not solely rely on Pompelia's word. See Gray, 486 Fed. Appx. at 801-02.

need not rely solely on a literal reading of the statute. Georgia case law supports this conclusion. This statute is largely applied to cases involving real property. See, e.g., Kerr v. State, 193 Ga. App. 165, 166 (1989) (Blocking an entrance to a facility interfered with the use of that facility.); Walls v. State, 161 Ga. App. 625, 627 (1982) (Padlocking the gates of a piece of property was interference with the use of it.). Even in the cases involving personal property, it is applied where a party is physically precluded from using the property. See, e.g., Jones v. State, 278 Ga. App. 616 (2006) (husband interfered with his wife's use of her car when he let the air out of the tires, removed the lug nuts, and disconnected the battery cable). The Defendants provide no case where this statute has been applied in the manner they suggest. They supply no other reason why a reasonable person would have believed this statute was violated based on the facts.

However, Crawford may not be liable. Crawford may only be held liable if he personally participated in the arrest. See Brown v. City of Huntsville, Ala., 608 F.3d 724, 737 (11th Cir. 2010). "Merely being present with the arresting officers at the scene is not enough, unless the plaintiff can show that the defendant officer was part of the chain of command authorizing the arrest action." Id. Gray fails to make such a showing, and so summary judgment as to the Plaintiff's false arrest claim against the

Defendant Crawford should be granted. The false arrest claim as to the Defendant Ferdarko proceeds to the qualified immunity analysis.

### C. Qualified Immunity

"To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Kingsland, 382 F.3d at 1232 (internal quotation marks omitted). That is conceded here. "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id. (internal quotation marks omitted). This requires two inquiries. See id. The first inquiry, whether the facts alleged demonstrate that Ferdarko violated a constitutional right, has already been resolved. The second inquiry is to "determine whether the right violated was clearly established." Id. The Court determines whether it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." U.S. v. Lanier, 520 U.S. 259, 270 (1997). "In wrongful arrest cases, we have defined the 'clearly-established' prong as an 'arguable probable cause' inquiry." Moran v. Cameron, 362 Fed. Appx. 88, 93 (11th Cir. 2010). This is "a more lenient standard than probable cause." Id. at 94. In effect, the Court must determine whether the Defendants' violation was clear enough to give them fair warning. Lanier, 520 U.S. at 270-71 ("[T]he qualified immunity test is simply the

adaptation of the fair warning standard to give officials . . . the same protection from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes.").

On Ferdarko's motion for summary judgment, the Court must determine whether "the evidence . . . viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity." Johnson v. Breeden, 280 F.3d 1308, 1317 (11th Cir. 2002). Here, when viewed in the light most favorable to Gray, the evidence suggests that all of the property was packaged and covered, no list of damaged property was created by Pompelia prior to Gray's arrest, no reasonable inspection of the property took place, and Ferdarko had no other independent basis for believing that Gray committed a crime. Based on these conclusions, it was clear that there was no probable cause when the arrest took place.[2]

---

[2] In determining whether there was fair warning, the Court may look to whether Eleventh Circuit case law made clear that particular conduct was unlawful. See Rehberg v. Paulk, 611 F.3d 828 n.15 (11th Cir. 2010). The Kingsland decision, which clarified the reasonable investigation requirement, was rendered in 2004. This was before Gray's arrest, and arguably gave clear warning. See Lanier, 520 U.S. at 271 ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.").

## IV. Conclusion

For the reasons set forth above, the Court GRANTS in part and DENIES in part the Defendants' Motion for Summary Judgment [Doc. 48] and DENIES the Plaintiff's Cross-Motion for Partial Summary Judgment [Doc. 55].

SO ORDERED, this 4 day of October, 2013.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge